Cite as 2025 Ark. App. 215

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-24-42

| | | |
|---|---|---|
| ALEXIS MCALLISTER | | Opinion Delivered: April 9, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT |
| V. | | [NO. 04PR-22-1059] |
| | | |
| TERRY MCALLISTER | | HONORABLE DOUG SCHRANTZ, |
| | APPELLEE | JUDGE |
| | | |
| | | DISMISSED |

## WENDY SCHOLTENS WOOD, Judge

Alexis McAllister appeals the Benton County Circuit Court's order denying her request for an injunction preventing her stepmother, appellee Terry McAllister, from selling the home of her father, Michael McAllister. Alexis is the executor of Michael's estate. Terry is Michael's widow. The dispute concerns the ownership of the home in which Michael lived when he died. Because we have no jurisdiction over an appeal from the final order denying the injunction, and an appeal from the court's order vacating the temporary restraining order is moot, we dismiss the appeal.

Michael died in a hotel room on August 28, 2022, while on vacation with Alexis and her boyfriend in Indianapolis. Michael was survived by two adult children: Alexis and Mason McAllister. Michael was married to Terry, but they were separated and in the process of divorce when he died. At the time of his death, Michael lived in a home located at 10890

Gates Lane, Pea Ridge, Arkansas (the "home"). Terry, who was not living in the home at the time, moved back into the home immediately after Michael died.

On September 28, 2022, Alexis filed a petition for administration of the estate and appointment of executor. In the petition, Alexis alleged that Michael died intestate, requested that she be appointed executor, and asked the court to enter a temporary restraining order ("TRO") preventing the sale of the home. Alexis alleged that the home was an asset of the estate and that Terry had listed the home for sale. Although the Benton County real estate records indicate that Michael had quitclaimed the home to himself and Terry as tenants by the entirety, Alexis alleged that there were questions regarding whether Terry caused Michael's death, whether Michael was intoxicated when he signed the deed transferring title to him and Terry, and whether the legal description in the deed was valid. Alexis also filed a lis pendens in the county real-estate records providing notice of the court action. The court entered a TRO that day prohibiting Terry from selling the property.

On October 11, Terry filed a response to the petition along with a motion to lift the TRO and a petition to remove the lis pendens. She denied the allegations against her, claiming that she had nothing to do with Michael's death; stated that she owned the home with Michael as tenants by the entirety and attached a quitclaim deed granting the property to her and Michael filed of record on July 26, 2021; said that Michael was sober when he signed the deed and had full knowledge of what he was signing; and claimed that the home was lawfully hers and was not part of Michael's estate. She argued that Alexis had failed to allege specific facts showing that immediate and irreparable injury or loss would result but

had merely made "wild and unfounded accusations." She asked the court to lift the TRO and order that the lis pendens be removed.

The court held a hearing on Alexis's petition on November 10 and 21. Several of Michael's friends testified that he was an alcoholic and that he signed the deed because Terry was going to divorce him if he did not. Sandra Fletcher and Norman James Keene, friends of Michael and Terry, testified that Michael asked them to meet at Gusano's Pizza to act as witnesses to the signing of the quitclaim deed. They said that Michael understood what he was signing and that they witnessed both Michael and Terry sign the deed. Both also testified that they had seen Michael intoxicated before and that he was not intoxicated when he signed the deed. Keene's wife, Brenda Flanagan, was also present and notarized the signatures on the deed. Flanagan testified that she was a loan officer at a bank, that she had been friends with Michael for over thirty years, and that Michael told her he wanted to deed the property to himself and Terry. Flanagan obtained a form quitclaim deed, filled in the names and property description, and notarized Michael's and Terry's signatures after they executed the deed. She said that neither Michael nor Terry drank alcohol before signing the deed, that she had seen Michel intoxicated many times, and that Michael was not intoxicated when he signed the deed. She confirmed that she explained the consequences of execution of the deed and said that Michael understood what he was signing, had no hesitation, and signed of his own free will.

The court entered an order on December 1 vacating the TRO and ordering that the lis pendens be removed. Also on December 1, Alexis filed a notice of appeal from the court's

order and a motion to stay the order pending appeal, which the court granted. Rather than filing the record with the appellate court to perfect an appeal from the court's order, Alexis filed a "Petition for Permission to Appeal" on December 15 with the Arkansas Supreme Court, alleging that the supreme court had jurisdiction to hear the appeal pursuant to Rule 1-2(a)(8) of the Rules of the Arkansas Supreme Court and Court of Appeals and Rule 2(a)(6) of the Arkansas Rules of Appellate Procedure–Civil. On February 6, 2023, the supreme court denied Alexis's petition, and Alexis did not pursue this appeal any further.

On June 20, the circuit court held what it called a "final hearing" in the case. Counsel for the parties detailed the evidence presented at the November 2022 hearing, and Alexis put on three additional witnesses. The first was Michael's sister, who testified that Michael had been an alcoholic since he was eighteen years old, that Michael and Terry were never sober when they were together, that Michael regretted signing the deed and wanted to dissolve it, and that Terry was stalking him in the months before his death. The second witness was Michael's best friend. Alexis proffered his testimony, which the court did not consider because he was not on the original list of witnesses. Finally, she called Terry in order to proffer testimony regarding certain texts between her and Michael, but the court did not consider the proffered testimony. In closing, Alexis asked the court to find that the home is an asset of Michael's estate.

Terry argued that the witnesses had no personal knowledge regarding the events surrounding execution of the deed, there was no evidence to support the argument that Michael was intoxicated when he signed it or that he did not intend to transfer an interest

in the property to Terry at the time of execution, and there was no evidence that Terry had anything to do with Michael's death. Terry claimed that nothing additional had been presented since the November 2022 hearing, there was no evidence demonstrating that the home was an asset of the estate, and thus the court's conclusions in its prior order vacating the TRO and releasing the lis pendens should remain the same.

On June 21, the court entered another order vacating the TRO and ordering that the lis pendens be removed.[1] On June 21, Alexis filed a notice of appeal from the order, a motion to stay the order pending appeal, and a motion for certification of final judgment. On July 4, Alexis filed a motion for reconsideration of the court's June 21 order, which the court denied on August 8, but which was deemed denied on August 3. Ark. R. Civ. P. 59(b); Ark. R. App. P.–Civ. 4(b)(1) (2024). On August 14, Alexis filed an amended notice of appeal from the deemed denial of her motion for reconsideration. On August 24, the court denied Alexis's motion to stay the order pending appeal.

On October 2, the court entered a "Certification of Final Judgment" in which it made the following findings and conclusions:

The Slayer's Statute does not apply.

The mistake in the legal description was a mutual mistake.

The Decedent was not intoxicated when he signed the deed.

---

[1]It is unclear why this order was issued since the court had entered a substantially identical order on December 1, 2022, vacating the TRO and ordering that the lis pendens be released. While the order was stayed when Alexis pursued her appeal, the circuit court lifted the stay on February 8, 2023.

> The real property is not an asset of the Estate.
>
> The decedent intended to transfer the real property to himself and Terry McAllister as tenants by the entirety in executing the deed.
>
> Upon the basis of the foregoing factual findings, the court hereby certifies, in accordance with Rule 54(b)(1), Ark. R. Civ. P., that it has determined that there is no just reason for delay of the entry of a final judgment and that the court has and does hereby direct that the judgment shall be a final judgment for all purposes.

Alexis did not file a notice of appeal from this order or an amended notice of appeal after the court entered this final order.

Although neither party raises the issue, we must ensure that we have jurisdiction. The timely filing of a notice of appeal is a jurisdictional requirement that this court is obligated to raise sua sponte. *Ellis v. Ark. State Highway Comm'n*, 2010 Ark. 196, at 4, 363 S.W.3d 321, 324.

The circuit court entered a final order in this case on October 2, 2023; however, Alexis did not file a notice of appeal from that order. Accordingly, we have no jurisdiction to hear an appeal from that order. *Farm Bureau Mut. Ins. Co. of Ark., Inc. v. VJM Enters.*, 2017 Ark. App. 28, at 4, 511 S.W.3d 349, 351.

Alexis did file a timely notice of appeal from the June 21, 2023 order vacating the TRO.[2] However, any appeal from that order is moot. A temporary restraining order is a

---

[2]As previously stated, Alexis filed a notice of appeal from the circuit court's December 1, 2022 order vacating the TRO, but she failed to pursue that appeal after the supreme court denied her petition for permission to appeal.

short-term, stop-gap remedy that is available ex parte pursuant to Rule 65 of the Arkansas Rules of Civil Procedure when the movant shows that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition. 2 David Newbern, John Watkins, D.P. Marshall Jr. & Brandon Harrison, *Arkansas Civil Prac. & Proc.* § 35:2 (5th ed. 2024 update); Ark. R. Civ. P. 65 (2024). The question of whether the TRO should have been vacated in June 2023 is now moot because it has been replaced by an October 2023 final order finding that the home is not an asset of the estate and specifically and finally rejecting all Alexis's arguments. *See, e.g., S. Coll. of Naturopathy v. State of Ark. ex rel. Beebe*, 360 Ark. 543, 554–56, 203 S.W.3d 111, 117–18 (2005).

As a general rule, this court will not review issues that are moot. *Bentonville Sch. Dist. v. Sitton*, 2022 Ark. 80, at 5, 643 S.W.3d 763, 768. To do so would be to render advisory opinions, which this court will not do. *Id.*, 643 S.W.3d at 768. A case is moot when any judgment rendered would not have any practical legal effect upon a then-existing legal controversy. *Id.*, 643 S.W.3d at 768.

For the reasons stated herein, we dismiss Alexis's appeal.

Dismissed.

TUCKER and MURPHY, JJ., agree.

*Rojas Smith Attorneys, P.A.*, by: *Heather Hersh*, for appellant.

*Mostyn Prettyman, PLLC*, by: *William M. Prettyman III*, for appellee.

7